**Mayra A. Ledesma**, OSB#183942
mayra@nwjp.org
**Bonnie Allen-Sailer**, OSB#145178
bonnie@nwjp.org
**Corinna Spencer-Scheurich**, OSB#130147
corinna@nwjp.org
Northwest Workers' Justice Project
310 SW 4th Ave, Suite #320
Portland, Oregon 97204
Telephone: (503) 525-8454
Facsimile: (503) 946-3029

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **OMAR SANCHEZ**, an individual<br><br>    Plaintiff,<br>v.<br><br>**MCJ FACILITY SOLUTIONS, INC.,** formally known as **MID-COLUMBIA JANITORIAL, INC.,** an Oregon domestic business corporation,<br><br>    Defendant. | Case No. 3:21-cv-00048-SI<br><br>PLAINTIFF'S MOTION AND MEMORANDUM FOR ENTRY OF DEFAULT JUDGMENT AGAINST MCJ FACILITY SOLUTIONS, INC.<br><br>*Evidentiary hearing requested* |

**I. HEARING**

Plaintiff requests a hearing to present evidence on his emotional distress damages.

Plaintiff estimates 30 minutes will be sufficient for the hearing.

Page 1 of 18– MOTION AND MEMORANDUM FOR DEFAULT JUDGMENT

## II. MOTION

Omar Sanchez moves for the entry of a default judgment for economic damages in the form of lost wages in the amount of $43,519.82 and noneconomic damages in the form of emotional distress, embarrassment, humiliation, anxiety, and pain and suffering, in the amount of $100,000, or an amount to be proved at hearing, against MCJ Facility Solutions, Inc., after its failure to file an answer in the above referenced action within the time prescribed by law.

In support of this motion, Plaintiff relies upon the Memorandum in Support of Default Judgment, below. He also relies on the Declarations of Bonnie Allen-Sailer and Omar Sanchez, filed concurrently, and all material facts alleged in his Complaint which were established as true when Defendant defaulted.

## III. MEMORANDUM

Omar Sanchez ("Plaintiff") contends that MCJ Facility Solutions, Inc. ("Defendant") is liable to him for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (ADA); Oregon anti-discrimination protections related to disability, use of the Workers' Compensation system, and use of protected leave under the Oregon Family Leave Act, O.R.S. §§ 659A.112, 659A.040, 659A.183. Plaintiff alleges Defendant failed to provide reasonable accommodation, retaliated against, and ultimately unlawfully terminated Plaintiff after he requested modified work after a workplace injury.

This Court entered a Default Order against the Defendant on June 3, 2021. Pursuant to FRCP 55(b)(2), Plaintiff now moves for judgment against the defaulting Defendant. Plaintiff also asks the Court to award him lost wages and compensatory damages, as well as noneconomic damages and liquidated damages. Plaintiff seeks entry of judgment against Defendant in the amount of $143,519.82.

## IV. EVIDENCE RELIED UPON

It is well established that when a defendant is in default, all factual allegations in a plaintiff's complaint concerning the defendant's liability are taken as true. *Fair Housing Authority v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Santiago v. Tamarack Tree*, 2007 U.S. Dist. Lexis 83934, *1-*3, CV-06-1811-HU (D. Or. 7/13/07), *adopted in relevant part, Santiago v. Tamarack Tree Co.*, 2007 U.S. Dist. LEXIS 79399, *9-*10, CV-06-1811-HU (D. Or. 10/24/07).

Accordingly, Plaintiff relies on his Complaint with respect to Defendant's liability. *Combs*, 285 F.3d at 906; *Santiago v. Tamarack Tree*, 2007 U.S. Dist. Lexis 83934 at *1-*3. Although not required to do so, Plaintiff has supplemented his Complaint with declarations establishing facts relevant to liability that are available without discovery from Defendant. *See* Declaration of Omar Sanchez, dated March 17, 2022 ("Sanchez Decl.").

With respect to the amount of damages, Plaintiff relies on his Complaint as to the facts underlying his damages, as well as a declaration of counsel as to how those damages may be calculated. *See* Declaration of Bonnie Allen-Sailer, dated March 29, 2022 ("Allen-Sailer Decl."). Under Rule 55(b)(2), the court has discretion to rely on documentary evidence and declarations. *See Davis v. Fendler,* 650 F.2d 1154, 1161-62 (9th Cir. 1981) (affirming default judgment with damages assessed based on documentary evidence); *Fustok v. ContiCommodity Servs.Inc.* 873 F.2d 38, 40 (2nd Cir. 1989) (court has discretion whether to hold evidentiary hearing or to rely solely on affidavits or documentary evidence to evaluate damages). Should the Court exercise its discretion to hold a hearing regarding this motion pursuant to Rule 55(b)(2), judgment may nevertheless be entered here, supported by the evidence submitted by the Plaintiff. *Id*. Fed. R. Civ. P. 55(b)(2).

## V. SUMMARY OF FACTS


Plaintiff began working as a janitor and handyman for Defendant on January 29, 2015. Sanchez Decl. ¶1; Compl. ¶16. Plaintiff's immediate supervisor was Valerie Christman, the owner and operator of MCJ Facility Solutions. Sanchez Decl. ¶4; Compl. ¶25. Defendant employed over 25 people at the time of Plaintiff's employment. Sanchez Decl. ¶3; Compl. ¶14.

Plaintiff first injured his left knee in 2016 while working at his second job as a handyman at H2Oregon. Sanchez Decl. ¶5; Compl. ¶17. Plaintiff filed a claim for worker's compensation after his injury, which was accepted by SAIF Corporation. Sanchez Decl. ¶6; Compl. ¶18. During this time period, Defendant complied with the work accommodations Plaintiff requested in the claim. Sanchez Decl. ¶7; Compl. ¶19. Plaintiff was placed on light duty and allowed time off to rest his knee and receive treatment from his medical providers. Sanchez Decl. ¶¶8-11; Compl. ¶¶20-25.

On February 17, 2019, Plaintiff woke up during the night with an unexpected and intense pain in his left knee. Sanchez Decl. ¶14; Compl. ¶27. He took a strong dose of prescribed medication and two Advil to relieve the pain. Sanchez Decl. ¶14; Compl. ¶27. The medication caused Plaintiff to sleep through his alarm on the morning of February 18, 2019. Sanchez Decl. ¶15; Compl. ¶28. Discovering his pain was still severe upon awakening, Plaintiff immediately sought medical treatment from Dr. Robert Schwartz. Sanchez Decl. ¶15; Compl. ¶29.

While at Dr. Schwartz's office, Plaintiff corresponded with Defendant via text, explaining his medical situation.  Sanchez Decl. ¶16; Compl. ¶30. Plaintiff sent Defendant a copy of a note he received from Dr. Schwartz advising: "No kneeling, squatting, or walking greater than ¼ mile for two weeks due to medical injury." Sanchez Decl. ¶16; Compl. ¶30.

After receiving no reply to his texts, Plaintiff returned to work on February 19, 2019, planning to perform light duty work as he had on similar occasions. Sanchez Decl. ¶¶16-18;

Compl. ¶31. Ms. Christman sent Plaintiff home without discussing accommodations and told him to not return to work until the doctor removed all of his restrictions, despite Plaintiff's ability to work under similar modifications in the past. Sanchez Decl. ¶19. Compl. ¶31.

Plaintiff returned to Dr. Schwartz on February 21, 2019, and asked him to remove the restrictions because Plaintiff believed he was in danger of losing his job. Sanchez Decl. ¶20; Compl. ¶33. Although Dr. Schwartz did not want to remove the restrictions he provided Plaintiff an additional note, stating: "Okay to work starting on February 20, 2019, with the specific modifications for 2 weeks of no kneeling, squatting, or walking greater than ¼ mile." Sanchez Decl. ¶21; Compl. ¶33.

Defendant continued to refuse to allow Plaintiff to return to work or engage in any discussion about possible accommodations that would allow Plaintiff to follow his doctor's recommendations while working. Sanchez Decl. ¶¶ 19, 24; Compl. ¶34. Defendant terminated Plaintiff on February 28, 2019, before he was released to full duty. Sanchez Decl. ¶25; Compl. ¶36. Plaintiff told Ms. Christman he believed he was entitled to medical leave without the threat of termination. Sanchez Decl. ¶26. Ms. Christman responded that because Plaintiff was no longer employed by Defendant, his right to medical leave was immaterial. Sanchez Decl. ¶26.

Plaintiff returned to Dr. Schwartz on March 1, 2019. Sanchez Decl. ¶27; Compl. ¶37. He told Dr. Schwartz that he could not afford to lose his job. Sanchez Decl. ¶27; Compl. ¶37. Dr. Schwartz wrote a note stating that Plaintiff was released to full occupational duties starting March 4, 2019. Sanchez Decl. ¶27; Compl. ¶37. Plaintiff sent a copy of the note to Defendant. Sanchez Decl. ¶28; Compl. ¶37. Defendant did not respond or reinstate Plaintiff. Sanchez Decl. ¶29; Compl. ¶38.

Plaintiff was unemployed for the rest of the year and has had difficulty finding steady employment comparable to his previous position at MCJ. Sanchez Decl. ¶30. Plaintiff's termination and his inability to secure a stable and financially sound position has caused extreme stress and mental anguish. Sanchez Decl. ¶31.

Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries and the Equal Employment Opportunity Commission and was notified of his right to file a civil suit in on October 14 and 28, 2020, respectively. Compl. ¶10-12. This proceeding timely followed. *See* Complaint.

## VI. DISCUSSION

Plaintiff asks this court to enter judgment for Plaintiff because he has satisfied the requirements for entry of default judgment under Rule 55(b)(1), as explained in Section A below. In addition, Plaintiff has established Defendant's liability under federal and state anti-discrimination laws as explained in Section B.

A. **Judgement may be entered because Defendant is not a minor nor incompetent person and has not appeared before the Court.**

Plaintiff has satisfied the conditions for entry of default judgment pursuant to Rule 55(b)(2). Under this Rule, a party may apply to the court and the court may freely enter judgment so long as the defendants are not minors nor incompetent and have not appeared. Defendant is a business, and therefore not a minor nor incompetent. Allen-Sailer Decl. ¶6. Despite legal competency, Defendant has not appeared nor provided any response to the lawsuit since it has been filed. Allen-Sailer Decl. ¶9.

For these reasons, Plaintiff requests this Court enter judgment against Defendant.

**B. Plaintiff is entitled to damages because Defendant violated federal and Oregon law when it failed to accommodate his limitations and terminated him due to his workplace injury.**

**1. Defendant violated the Americans with Disabilities Act when it failed to engage in an interactive process or reasonably accommodate Plaintiff's disability and terminated Plaintiff in substantial part due to his disability.**

The American with Disability Act protects workers from discrimination due to a disability. 42 U.S.C. § 12101 *et seq.* To succeed in a claim under the act, Plaintiff must show that (1) he is a person with a disability or was perceived by his employer as having a disability, (2) Plaintiff was otherwise qualified to perform his job with a reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. 42 U.S.C. § 12101 *et seq.* Plaintiff must also show that Defendant is a 'covered entity' as defined by 42 U.S.C. § 12111(2).

Defendant is a covered entity. A covered entity for purposes of the ADA's workplace protections includes an "employer," 42 U.S.C. § 12111(2); which is defined as "a person engaged in an industry affecting commerce who has 15 or more employees… and any agent of such person," 42 U.S.C. § 12111(5)(A). "[A]n industry affecting commerce" is an intentionally broad term which includes most businesses involved in trade among the states. 29 CFR § 401.3; Defendant, as a janitorial corporation providing cleaning and handyman services to a wide-variety of businesses, satisfies that requirement. Sanchez Decl. ¶1; Compl. ¶¶15-16. Further, Defendant had more than 25 employees during the time period that Plaintiff was employed. Sanchez Decl. ¶3; Compl. ¶14.

Plaintiff was a person with a disability or was perceived to have a disability. The injury Plaintiff sustained to his knee in 2016 created a physical impairment that substantially limited

Page 7 of 18– MOTION AND MEMORANDUM FOR DEFAULT JUDGMENT

major life activities such as standing, walking, running, lifting, and bending. 42 U.S.C. § 12102(1)-(2); 29 C.F.R. § 1630.2; Sanchez Decl. ¶9; Compl. ¶23. Defendant was aware of Plaintiff's injury and the limitations it placed on his abilities. Sanchez Decl. ¶7; Compl. ¶24. The injury was not transitory; Plaintiff had been impaired for three years already at the time of these events. 42 U.S.C. § 12102(3)(B).

Plaintiff was otherwise qualified to perform his job with reasonable accommodations and had been doing so since his initial injury in 2016. Sanchez Decl. ¶11; Compl. ¶19. After his injury he periodically required accommodations, such as using a golf cart to travel between work sites, but was able to complete the essential functions of the job. Sanchez Decl. ¶18; 42 U.S.C. § 12102(8). Plaintiff performed satisfactorily in his position for four years before his termination. Sanchez Decl. ¶1; Compl. ¶¶15, 36.

Plaintiff suffered adverse actions on account of his disability. First, Defendant failed to engage in an interactive process with him to discuss possible accommodations that would allow him to continue working. The interactive process requires the Defendant to identify and provide a reasonable accommodation that would enable Plaintiff to perform the position's essential functions. Employers are required to engage in such a process before determining whether the requested accommodations are reasonable. 42 U.S.C. § 12112(b)(5)(A). Defendant also failed to make reasonable accommodations that it had provided in the past and failed to explain why those accommodations were no longer possible. Sanchez Decl. ¶¶ 19, 24; Compl. ¶31. Failure to make reasonable accommodations constitutes discrimination under the ADA. 42 U.S.C. § 12112(b)(5)(A). Here, Defendant insisted Plaintiff not return to work until his work restrictions were lifted and he was able to work without accommodation. Sanchez Decl. ¶19; Compl. ¶31. It

thus failed to engage in an interactive process and failed to make reasonable accommodations for Plaintiff.

Second, Defendant terminated Plaintiff due to his disability and resulting need for occasional accommodations in violation of the ADA. 42 U.S.C. § 12112(a). Defendant terminated Plaintiff due to the restrictions his doctor requested and did not respond to Plaintiff's attempts to contact it to request reinstatement even after his doctor lifted those restrictions. Sanchez Decl. ¶27; Compl. ¶¶34, 36. This is explicit, direct evidence of Defendant's discriminatory motivation for terminating Plaintiff. Timing further supports the conclusion that Plaintiff's disability motivated his termination, since it occurred immediately following the flareup of his physical limitations and related work restrictions. Sanchez Decl. ¶25; Compl. ¶¶34-35. "Causation can be inferred from timing alone where an adverse employment action follows on the heels of a protected activity." *Villarimo v. Aloha Island Air, Inc.*, 281 F3d 1054, 1065 (9th Cir 2002); *see also Davis v. Team Elec. Co.*, 520 F3d 1080, 1094 (9th Cir 2008). Defendant's adverse employment action followed the heels of a protected activity, ten days to be exact. It can thus be inferred Plaintiff was terminated because of the injury he sustained and the restrictions his doctor placed on his ability to work. Therefore, the court should find Plaintiff's termination was unlawful.

Plaintiff is entitled to a judgment awarding him back pay, compensatory damages, and attorney fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(g), (k), and 12117(a) for Defendant's violations of the ADA.

### 2. The same conduct violated Oregon's state law protections against disability discrimination in employment.[1]

---

[1] The Court in this case has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S. Code § 1367. Plaintiff's state law claims alleging discrimination on account of his disability and because he invoked the protections of Oregon's workers' compensation system and family leave act all arise out of the same set of facts involving the same parties as his federal anti-discrimination claim under the ADA.

Page 9 of 18– MOTION AND MEMORANDUM FOR DEFAULT JUDGMENT

Defendant's actions in failing to engage in an interactive process, failing to make reasonable accommodations for Plaintiff's known physical limitations, and terminating Plaintiff due to Plaintiff actual or perceived disability also constitute a violation of Oregon law. *See* O.R.S. § 659A.112; O.A.R. 839-006-0206.

Plaintiff is entitled to back pay, compensatory damages, and attorney fees and costs pursuant to O.R.S. § 659A.885 for Defendant's violation of O.R.S. § 659A.112.

### 3. Defendant's termination of Plaintiff violated Oregon state law protecting individuals who invoke the benefits of the workers' compensation system.

Under O.R.S. § 659A.040(1), "[i]t is unlawful practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided in O.R.S. chapter 656 Workers' Compensation Law…"[2] Plaintiff must show that (1) he was a worker that invoked the workers' compensation system; (2) he suffered an adverse employment action; and (3) Defendant took the adverse action because [Plaintiff] invoked the workers' compensation system'" *Williams v. Frightliner, LLC.,* 196 Or.App. 83, 89-90 (Or. App. 2004); *Hayes v. Wal-Mart Stores, Inc.*, 781 F Supp 2d 1080, 1092 (D Or 2011). Plaintiff must also show that Defendant employed six or more persons. O.R.S. § 659A.040(2).

Defendant is a covered employee under Oregon's law protecting injured workers from retaliation, because Defendant employed at least six persons. Sanchez Decl. ¶3, O.R.S. § 659A.040(2).

---

[2] For the purposes of this motion, Plaintiff is not pursuing his claims for reinstatement and/or reemployment pursuant to O.R.S. §§ 659A.044 and 659A.046 respectively.

Page 10 of 18– MOTION AND MEMORANDUM FOR DEFAULT JUDGMENT

Plaintiff invoked the workers' compensation system when he reported his 2016 on-the-job injury and filed a workers' compensation claim with SAIF and requested modified duties to assist in his recovery from that injury. Sanchez Decl. ¶7; Compl. ¶18. "Invoke" is a broad term includes, but is not limited to, a worker's reporting of an on-the-job injury or perception by the employer that the worker has been injured on the job or will report an injury. O.A.R. 839-006-0105(7). When his pain increased in late 2018 and early 2019, Plaintiff again contacted SAIF and received additional medical treatment. Compl. ¶21; Sanchez Decl. ¶12–13. These actions likewise constitute applying for benefits, invoking, and/or utilizing the workers' compensation system.

Although Plaintiff's original injury occurred while he was working for another employer, Defendant was aware that his physical limitations stemmed from a workplace injury and that Plaintiff had invoked and was making use of the benefits of the workers' compensation system. Sanchez Decl. ¶¶6, 7; Compl. ¶19. Plaintiff communicated with Defendant about his injury and the modified work order his workers' compensation doctor had provided him. Sanchez Decl. ¶7; Compl. ¶30. The anti-discrimination provisions in O.R.S. § 659A.040 include no language limiting the protections to actions committed by the employer at whose workplace the worker was injured. To do so would be contrary to the broad purpose of the statutes to prohibit "discrimination against employees who use the Workers' Compensation statutes." O.A.R. 839-006-0100(1). And indeed, the language of the provision contemplates such a broad application because it explicitly prohibits discrimination in hiring, which would apply primarily to a new employer, not one where a worker was already employed. *See* O.R.S. § 659A.040(1) ("It is an unlawful employment practice for an employer to discriminate against a worker *with respect to hire* or tenure or any term or condition of employment…") (emphasis added).

Plaintiff suffered an adverse employment action when he was fired while on medical restrictions for a flare up of his previous workplace injury. Sanchez Decl. ¶25; Compl. ¶36. Unlawful employment practices under O.R.S. § 659A.040 include "discharge from employment." O.A.R. 839-006-01117(1)(a).

Plaintiff was fired because he invoked the workers' compensation system. Courts have routinely said that "proof of motivation is rarely direct and often, necessarily, circumstantial and inferential." *Wheeler v. Marathon Printing, Inc.*, 974 P.2d 207, 157 Or.App. 290, 303 (Or. App., 1998). Here, there is ample evidence to conclude that Plaintiff's invocation of the workers' compensation system motivated his termination, including Defendant's refusal to discuss his requested physical restrictions and its insistence he not return until his doctor lifted those restrictions.

The timing of Plaintiff's removal and termination further establishes Defendant's discriminatory motive. *Medina v. State*, 278 Or App 579, 589, 377 P.3d 626 (Or. App., 2016) (holding timing supported inference that adverse actions were retaliatory where one month had passed from protected activity). On February 18, 2019, Plaintiff informed Defendant that a flare up or reaggravation of his workplace injury caused him to require modified work duties for two weeks. Sanchez Decl. ¶16; Compl. ¶30. Defendant told Plaintiff not to report to work at all and then terminated him 10 days later. Sanchez Decl. ¶¶19, 25; Compl. ¶¶31,36.

Therefore, the Court should find that Plaintiff has established that he is entitled to default judgment against Defendant on this claim. Plaintiff is thus entitled to back pay, noneconomic damages, attorney fees and costs. O.R.S. § 659A.885.

4. **Defendant violated the Oregon Family Leave Act when it denied Plaintiff leave to recover from his knee injury and terminated him because of that injury.**

Oregon law prohibit employers from "deny[ing] family leave to which an employee is entitled" and from retaliating or discriminating against a worker who has "inquired about the provisions of," "submitted a request for," or "invoked any provision of" the Oregon Family Leave Act. O.R.S. § 659A.183; *Yeager v Providence Health Sys. Oregon*, 195 Or. App. 136, 138-9, 96 P.3d 862 (2004).

Under the Oregon Family Leave Act, an employee is eligible for family leave to recover from or seek treatment for the employee's own serious health condition, once the employee has shown: (1) employer employs 25 or more employees; (2) employer employed employee at least 180 days; and (3) employee worked an average of more than 25 hours per week during that time. An employee may take family medical leave without notice if there is an "unexpected serious health condition of the employee." O.R.S. § 659A.165(2)-(3) (requiring oral notice within 24 hours after the leave commences and a written notice three days after the employee's return to work in such circumstances). Eligible employees may use up to 12 weeks of unpaid, job-protected leave. O.R.S. §§ 659A.162, 659A.159; O.A.R. 839-009-0210(19).

Here, Plaintiff's employer MCJ Facility Solutions, Inc. employed over 25 people when Plaintiff was employed. Sanchez Decl. ¶3; Compl. ¶14. MCJ Facility Solutions, Inc. employed Plaintiff as a janitor and handyman for over 3 years as a full-time employee, satisfying the requirements for duration and extent of employment. Sanchez Decl. ¶¶1, 2; Compl. ¶¶15, 16. Therefore, the Court should find Plaintiff is protected under the Oregon Family Leave Act.

Plaintiff gave adequate notice of his need for medical leave. Under O.R.S. § 659A.165(2), an employee may take family medical leave without notice if the need to do so is "unexpected." Plaintiff woke during the night to an unexpected, intolerable pain in his left knee. Sanchez Decl. ¶14; Compl. ¶27. Finding the pain still debilitating that morning, Plaintiff missed work to seek

Page 13 of 18– MOTION AND MEMORANDUM FOR DEFAULT JUDGMENT

urgent medical care for the issue. Sanchez Decl. ¶15; Compl. ¶29. Plaintiff texted his employer that afternoon, providing notice and documentation from his doctor well within the 24 hours required by O.R.S. § 659A.165(3). Sanchez Decl. ¶16; Compl. ¶30.

Plaintiff's knee injury constituted a serious health condition, entitled him to 12 weeks of job protected leave to seek treatment and recover. Under O.R.S. § 659A.150(6)(b), "serious health condition" includes: an illness, disease, or condition that in the medical judgment of the treating health care provider "requires constant care." Here, Plaintiff's knee injury constituted a serious health condition because it required constant care. Plaintiff has been receiving care for his left knee since 2016 and the injury continues to inhibit him. Sanchez Decl. ¶¶5, 9, 30; Compl. ¶17. Further, Plaintiff's medical provider advised him to take leave to allow his knee to heal. Sanchez Decl. ¶16; Compl. ¶30. Plaintiff's knee injury therefore is a covered condition under OFLA and he was entitled to leave to care for himself.

Instead of allowing Plaintiff to take the time he needed to allow his knee injury to heal, Defendant terminated him 10 days later. Sanchez Decl. ¶25; Compl. ¶36. Defendant thus violated Oregon law by denying Plaintiff leave to which he was entitled. O.R.S. § 659A.183(1).

Defendant further violated the Oregon Family Leave Act by retaliating and/or discriminating against Plaintiff after he "inquired about the provisions of," "submitted a request for," or "invoked any provision of" the Oregon Family Leave Act. O.R.S. § 659A.183(2).

Plaintiff inquired about, submitted a request for, or invoked the protections of OFLA when he informed Defendant on or around February 18, 2019, that his knee was seriously injured and he needed to reduce his work duties and acquire additional medical care in order to recover. Sanchez Decl. ¶16; Compl. ¶30. Plaintiff further invoked the protections of OFLA when he

objected to his termination on the grounds that he believed he was entitled to medical leave without threat of termination. Sanchez Decl. ¶26; Compl. ¶¶52, 53.

Defendant, not only denied Plaintiff the leave he was entitled to, as explained above, it further discriminated and retaliated against Plaintiff by terminating him and refusing to reinstate him because he invoked the protections of OFLA.

Plaintiff can establish that his protected activity caused the retaliatory action. As discussed above, comments by the employer about Plaintiff's injury and related restrictions, as well as the timing of Plaintiff's removal and termination support a finding that Defendant's motive was discriminatory. *Medina v. State*, 278 Or App 579, 589, 377 P.3d 626 (Or. App., 2016) (holding timing supported inference that adverse actions were retaliatory where one month had passed from protected activity). Here, Plaintiff was terminated 10 days after inquiring about, submitting a request for, or invoking the protections of OFLA, establishing a close proximity between the protected activity and the adverse, retaliatory action.

Plaintiff engaged in additional protected activity when he objected to his termination, stating he believed he was entitled to protected medical leave to recover from his injury. Sanchez Decl. ¶26. In response, Defendant refused to reinstate him, either then or when Plaintiff contacted Defendant after his medical restrictions had been lifted. Sanchez Decl. ¶29. On March 4, 2019, just five days after Defendant fired Plaintiff, Plaintiff was released to full occupational duties. Sanchez Decl. ¶27. Plaintiff sent the doctor's note to the Defendant, but Defendant did not respond to the doctor's note nor attempt to resume Plaintiff's employment. Sanchez Decl. ¶¶28, 29; see also O.R.S 659A.171(1) (establishing an employee must be reinstated to his former position, unless the position no longer exists, "without regard to whether the employer filled the position with a replacement during the period of family leave").

In addition to timing, additional circumstantial evidence supports the finding that Defendant terminated Plaintiff because he inquired about, submitted a request for, or invoked the protections of OFLA. Defendant's primary explanation for Plaintiff's termination was that he missed work the morning of February 18, 2019, without calling in. Sanchez Decl. ¶15; Compl. ¶28. However, as explained above, under OFLA, notice of an unexpected injury or medical condition is considered adequate if it occurs within 24 hours after the condition arises. O.R.S. § 659A.165(2)-(3). Plaintiff's notice was adequate under OFLA, and thus his absence that morning cannot be counted against him. O.A.R. 839-009-0320(4) ("It is unlawful employment practice for an employer to count OFLA leave against an employee in determining the employee's compliance with attendance policies or to count OFLA leave against an employee when determining eligibility for bonuses based on attendance."

This Court should therefore find that Plaintiff has established that he is entitled to default judgment against Defendant on his OFLA claims. Plaintiff is thus entitled to back pay, noneconomic damages, attorney fees and costs. O.R.S. § 659A.885.

**5. This Court should award Plaintiff a judgment against Defendant in the amount of $143,519.82 for Defendant's violations of federal and state law.**

Plaintiff Omar Sanchez thus moves for the entry of a default judgment in his favor on the above discussed claims. Plaintiff is entitled to a judgment against Defendant in the amount of $143,519.82, plus reasonable attorney fees and costs, for Defendant's violations of federal and state law.

Plaintiff's economic damages, in the form of lost wages, total $43,519.82. This amount is based on the amount of wages he has lost since his termination due to his difficulty finding a suitable replacement position. Allen-Sailer Decl. Exhibit 1. Plaintiff arrived at this calculation by

reviewing his previous years income and comparing it to the income he was able to earn in 2019 and 2020 after his termination. *Id.*; Allen-Sailer Decl. ¶3.

Additionally, Plaintiff moves for the entry of a default judgment for noneconomic damages in the form of emotional distress, embarrassment, humiliation, anxiety, loss of enjoyment of life and pain and suffering in the amount of $100,000, or an amount to be proved at an evidentiary hearing. 42 U.S.C. § 12112(b)(5); O.R.S. § 659A.885; Allen-Sailer Decl. ¶4. Plaintiff experienced significant distress related to his discriminatory treatment and termination. Sanchez Decl. ¶32. Plaintiff has felt nervous and anxious since his termination. *Id.* He has experienced headaches, nightmares, insomnia, stomach pain, and nausea. *Id.* He has struggled with feelings of sadness, helplessness, and shame. *Id.* Some of these symptoms continue to this day. *Id.*

Thus, in total Plaintiff should be awarded $143,519.82 in damages, plus reasonable attorney fees and costs pursuant to 42 U.S. Code § 12205 and O.R.S. § 659A.885 in an amount to be determined pursuant to the process laid out in Fed. R. Civ. P. 54(d).

## VII. CONCLUSION

Mr. Sanchez has met requirements of FRCP 55(b) for entry of judgment by default. Judgment should be entered for Mr. Sanchez against MCJ Facility Solutions, Inc., in the amount of $143,519.82, in addition to attorney fees and costs.

DATED this March 29, 2022.

                                                s/ Bonnie Allen-Sailer
                                                **Bonnie Allen-Sailer,** OSB#145178
                                                bonnie@nwjp.org
                                                Northwest Workers' Justice Project
                                                310 SW 4th Ave, Suite #320
                                                Portland, Oregon 97204
                                                Telephone: (503) 525-8454
                                                Facsimile: (503) 946-3029

Page 17 of 18– MOTION AND MEMORANDUM FOR DEFAULT JUDGMENT

## CERTIFICATE OF SERVICE

Defendant has not appeared or notified Plaintiff of his intent to appear, therefore this document has not been served on any additional party.

<div style="text-align: right;">
s/ Bonnie Allen-Sailer<br>
**Bonnie-Allen,** OSB#183942<br>
bonnie@nwjp.org
</div>